UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

EDGAR A. BORGES,

    Plaintiff,

v.                                          Case No. 3:18cv254-MCR-HTC

JERRY COOPER, et al.,

    Defendants.
_____/

REPORT AND RECOMMENDATION

Plaintiff, Edgar A. Borges, proceeding *pro se* and *in forma pauperis*, brought this action under 42 U.S.C. § 1983, alleging Defendants failed to protect him from an inmate assault during a transfer between correctional institutions. This matter is now before the Court on Defendants' Motion to Dismiss Plaintiff's Third Amended Complaint. ECF Doc. 57. After reviewing Defendants' motion, Plaintiff's response (ECF Doc. 60), and the relevant law, the undersigned respectfully recommends that Defendants' motion (ECF Doc. 57) be GRANTED for Plaintiff's failure to exhaust his administrative remedies.

    I.    **PLAINTIFF'S COMPLAINT**

Plaintiff is an inmate of the Florida Department of Corrections ("FDOC"), currently confined at Columbia Correctional Institution Annex. His Third Amended complaint names two (2) defendants: Sergeants Jerry Cooper and Jeffrey Rogers.

ECF Doc. 32 at 1. The crux of Plaintiff's allegations arises out of an incident that occurred on May 17, 2017, while Plaintiff was being transported from Gulf Correctional Institution Annex, where he was then confined, to Washington Correctional Institution for protective management placement.

According to Plaintiff, Defendants were aware of threats that had been made against his life and, nonetheless, failed to place Plaintiff in a secure area assigned to inmates in protective management during transportation. As a result, Plaintiff was attacked by three (3) inmate gang members. Plaintiff sues Defendants for violating his Eighth Amendment rights and seeks as relief $1,000,000 from each Defendant in compensatory and punitive damages, as well as declaratory relief and attorney's fees.[1]

## II.  LEGAL STANDARD

The Prison Litigation Reform Act ("PLRA") requires an inmate challenging prison conditions to first exhaust all available administrative remedies before filing

---

[1] In addition to failure to exhaust, Defendants also argue that Plaintiff is (1) barred from suing them in their official capacities; (2) not entitled to declaratory relief; and (3) not entitled to attorney's fees. A finding that Plaintiff failed to exhaust would bar Plaintiff from pursuing relief against the Defendants, making it unnecessary for the Court to reach these other arguments. Nonetheless, upon review, the undersigned finds that Plaintiff's suit against Defendants in their official capacities is barred by sovereign immunity, Plaintiff is not entitled to declaratory relief for a past wrong, and Plaintiff is not entitled to attorneys' fees since he is proceeding *pro se*. *See Gamble v. Florida Dept. of Health and Rehabilitative Services*, 779 F.2d 1509, 1513 (11th Cir. 1986) (finding Florida has not waived its sovereign immunity nor consented to be sued in damage suits brought pursuant to § 1983); *Green v. Mansour*, 474 U.S. 64 (1985) (finding declaratory relief is not appropriate where it pertains only to past violations of federal law); *Celeste v. Sullivan*, 988 F.2d 1069, 1070 (holding a *pro se* litigant is not entitled to attorney's fees).

Case No. 3:18cv254-MCR-HTC

an action under 42 U.S.C. § 1983. *See* 42 U.S.C. § 1997e(a). This requirement, while not jurisdictional and not required to be pled, is mandatory. *See Jones v. Brock,* 549 U.S. 199, 216 (2007); *Bryant v. Rich*, 530 F.3d 1368, 1374, n. 10 (11th Cir. 2008). Its purpose is to ensure that prison officials have an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. *Jones,* 549 at 204.

In the Eleventh Circuit, the defense of failure to exhaust under the PLRA is considered a matter in abatement and should be raised in a motion to dismiss or be treated as such if raised in a summary judgment motion. *Bryant,* 530 F.3d at 1374. Accordingly, "[a] district court may properly consider facts outside of the pleadings to resolve a factual dispute regarding exhaustion where the factual dispute does not decide the merits and the parties have a sufficient opportunity to develop the record." *Singleton v. Dep't of Corrections,* 323 F. App'x. 783, 785 (11th Cir. 2009) (citing *Bryant*, 530 F.3d at 1376).

Deciding a motion to dismiss for failure to exhaust administrative remedies involves a two-step process. *See Turner v. Burnside,* 541 F.3d 1077, 1082 (11th Cir. 2008). The Court first "looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, take plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be

dismissed." *Id.* at 1082. If the complaint is not subject to dismissal at the first step, the Court "then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Id*.

Also, in considering a motion to dismiss for failure to state a claim, the Court reads Plaintiff's *pro se* allegations in a liberal fashion, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), and accepts "[a]ll well-pleaded facts in plaintiff's complaint and all reasonable inferences drawn from those facts . . . as true." *McGinley v. Houston*, 361 F.3d 1328, 1330 (11th Cir. 2004) (citation omitted). However, mere "labels and conclusions" are not accepted as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)) (noting courts "are not bound to accept as true a legal conclusion couched as a factual allegation"); *Ashcroft v. Iqbal*, 556 U.S. 662, 680-81 (2009) (explaining that conclusory allegations are not entitled to a presumption of truth).

### III.   DISCUSSION

To determine whether Plaintiff exhausted his administrative remedies, the Court must look at the requirements imposed by the FDOC. *See Dimanche v. Brown*, 783 F.3d 1204, 1207 (11th Cir. 2015); *see also Jones,* 549 U.S. at 216 ("it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion"). Under the administrative review process established by the Secretary of the FDOC, a prisoner must: (1) file an informal grievance with a designated prison

staff member; (2) file a formal grievance with the warden's office; and then (3) submit an appeal to the Secretary of the FDOC. *Chandler v. Crosby,* 379 F.3d 1278, 1288 (11th Cir. 2004) (citing Fla. Admin. Code § 33-103). The prisoner must file his informal grievance **within twenty (20) days of when the incident or action being grieved occurred**. Fla. Admin. Code § 33-103.011(1)(a) (emphasis added).

Here, Defendants argue Plaintiff has failed to exhaust his administrative remedies because Plaintiff did not file a grievance in this matter until October 20, 2017, five (5) months after the incident at issue. In Plaintiff's response, he "agrees that the *served* grievances in support to the suit are in fact untimely."[2] ECF Doc. 60 at 2 (emphasis added). Reading the Plaintiff's response liberally, the Court concludes that, despite the concession of untimely served grievances, Plaintiff argues that he timely filed informal grievances, which appear to have been lost; or, alternatively, that good cause exists to excuse Plaintiff from having to timely file his grievances.[3] Plaintiff also argues he was prevented from exhausting his administrative remedies because he did not get a response to his timely informal grievances. The Court will address each of those arguments utilizing the *Turner* two-step process.

---

[2] Plaintiff's reference to "served" grievances appears to apply to the grievances that have been submitted to the Court by the parties at ECF Docs. 56 and 58-1.
[3] Indeed, in his Third Amended Complaint, Plaintiff asks the court to "[d]eem exhaustion has been fulfilled due to the Defendant's deliberate indifference negligent conduct." ECF Doc. 32 at 5.

### A. Plaintiff's October 20, 2017 Grievance is Untimely

In Plaintiff's response, he alleges that "he filed informal grievances from confinement but no response was ever given by the authorities in charge." ECF Doc. 60 at 2. Accepting that allegation as true, as this Court must under step one of the *Turner* analysis, Defendants are not entitled to dismissal. Under step two, however, after resolving issues of fact, the undersigned finds that Plaintiff did not timely file his grievance.

Both parties submitted grievances to the Court for review. The earliest grievance either party presented to the Court is the October 20, 2017 grievance. The undersigned finds this grievance telling because, in it, Plaintiff states, "I'm filing this informal grievance to ***begin*** the process of exhausting administrative remedies prior to bringing suit in federal court." ECF doc. 56 at 8 (emphasis added). This statement clearly contradicts any factual allegation that Plaintiff began the grievance process prior to October 20, 2017.

Indeed, Plaintiff makes no such allegations until December 2017, nearly seven (7) months after the May 17 incident and a month and a half after his October 24 denial. In a "request" dated December 7, 2017, Plaintiff states for the first time, "I would appreciate it if you could inspect you [sic] computer file concerning two formal grievance [sic] I submitted while I was assigned to Holmes Correctional

Institution, as I have not received any type of reply from the Assistant Warden or the Warden and 30 days have expired for me to continue on the next level." *Id.* Prison officials responded to Plaintiff's request on the day of receipt, stating, "We do not have a log of any grievances for you." *Id.*

The following day, on December 15, 2017, Plaintiff submitted another grievance to the Warden at Columbia CI, which was received on December 21, 2017. *Id.* In it, Plaintiff states, "I timely did an informal grievance at both Washington C.I. and then at Holmes C.I. but it was never responded to and I never got a receipt or tracking number." Prison officials denied Plaintiff's grievance on December 27, 2017, stating, "Upon reviewing the database, there is no informal logged during that time." Defendants continue to contend that they are unable to find any grievances filed by Plaintiff earlier than October 20, 2017.[4]  ECF Doc. 57 at 7.

Despite contending that he filed informal grievances which were timely, presumably lost, and not responded to, Plaintiff provides no specific details about these alleged timely grievances. He fails to identify: (1) when they were filed (other than generally stating in his response that he "filed informal grievances from confinement"), (2) with whom they were filed, or (3) why he waited seven months

---

[4] Plaintiff also submitted a "request", dated June 12, 2017, in which Plaintiff seeks a copy of the incident report for the May 17, 2017 incident, and a similar request, dated October 2, 2017. Neither party contends that these requests constitute a grievance, and, regardless, both are more than twenty (20) days after the alleged incident.

Case No. 3:18cv254-MCR-HTC

to follow up on them after not receiving a response. He provides no sworn testimony or other supporting evidence to support the existence of these absent informal grievances. *See Porter v. Sightler*, 457 F. App'x. 880, 882 (finding failure to exhaust where there was no sworn evidence in the record that plaintiff requested and was denied a formal grievance within the time required by the rules and where plaintiff did not mention that request and denial in his complaint).

Plaintiff's conclusory allegations alone are insufficient to satisfy *Turner*. *See Lawson v. Crtuchfield,* 2016 WL 5219466 *6 (N.D. Fla. Jul. 5, 2016) (Plaintiff's conclusory allegations that he filed an informal grievance that went unanswered and that his grievance was thrown away "fail[ed] to overcome Defendant's evidence that there was a grievance system in place for Plaintiff to use"). Accordingly, the undersigned finds that Plaintiff's grievance, which was not filed until October 20, 2017, was untimely. *See also Dunlap v. Corizon Health Care*, 2017 WL 3530103 *5 (N.D. Fla. Feb. 1, 2017) (finding failure to exhaust based in part on plaintiff's "unsworn and unsubstantiated" allegations); *Logue v. Pearson*, 2011 WL 2457501 *2 (S.D. Ga. Jun. 16, 2011) (finding failure to exhaust where plaintiff alleged filing numerous grievances but had "not offered any sworn evidence on that score, much less any copies of these alleged grievances").

### B. Plaintiff Fails to Show Good Cause

As stated above, Plaintiff also argues he was prevented from timely filing his grievances because (1) he was "confronted by an officer at medical (NWRC)" who "threatened Plaintiff to prevent him from filing any paperwork in relation to the incident in the bus" and (2) a representative of the Florida Inspector General's Office "told Plaintiff that he had to do nothing [and] that she would handle everything." ECF Doc. 60 at 2.  Accepting these allegations as true, Defendants are not entitled to dismissal under step one of the *Turner* analysis.  However, after resolving the issues of fact under step two, the undersigned finds that Plaintiff has failed to show good cause existed for Plaintiff's failure to timely file his grievance.

### 1. *Threats of Retaliation*

Although threats of injury or retaliation can render an administrative remedy "unavailable," Plaintiff has failed to show that such was the case here. *Turner,* 541 F.3d at 1084 ("it is possible for retaliation or the threat of retaliation to make administrative remedies unavailable to an inmate").  A threat of retaliation renders administrative remedies unavailable, and thus lifts the exhaustion requirement, only if both of these conditions are met: "(1) the threat *actually did* deter the plaintiff inmate from lodging a grievance or pursuing a particular part of the process; and (2) the threat is one that would deter a reasonable inmate of ordinary firmness and

fortitude from lodging a grievance . . . ." *Id*. at 1085 (emphasis added). Plaintiff is unable to establish either of those conditions.

First, the alleged threat did not actually prevent Plaintiff from filing grievances (or timely filing grievances). Indeed, Plaintiff states numerous times that he did, in fact, lodge grievances regarding the subject incident (and, as set forth above, even that he timely did so "from confinement"). ECF Doc. 60 at 2 ("Plaintiff . . . filed grievances in reference to the incident that took place on May 17, 2017 [and] filed the proper administrative remedies . . . ."). He further has not alleged how the threat prevented him from filing a grievance within twenty (20) days, and yet had no impact on him filing a request for the incident report just five (5) days later.

Second, Plaintiff fails to allege a threat that would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance or doing so in a timely manner. He states simply that he "was confronted by an officer at medical (NWRC)" who "threatened Plaintiff to prevent him from filing any paperwork in relation to the incident in the bus." ECF Doc. 60 at 2. He alleges no further facts, such as how he was threatened, what the threat pertained to, when that threat occurred, who the officer was, why such threat prevented him from timely filing his grievance, or even why he was able to file his requests and grievances later. Thus, standing alone, his allegations are too conclusory to meet the *Turner* standard. *See Williams v. Barrow*,

559 F. App'x. 979, 988 (Plaintiff's "conclusory allegation that he failed to exhaust his remedies because of 'escalating retaliation' does not come close to satisfying the *Turner* standard"); *see also Brown v. McGee*, 2015 WL 2238547 *4 (N.D. Fla. May 12, 2015) (plaintiff who alleged a single threat, made on one occasion, by one officer, during a months-long incarceration, did not meet the *Turner* standard because plaintiff did not allege why he did not grieve to another officer or attempt to file a grievance while the threatening officer was not present); *see also Toler v. Halley*, 2012 WL 555740 *5 (N.D. Fla. Jan. 12, 2012) (rejecting allegation that threats rendered administrative remedies unavailable *per se*).

### 2. Misinformation

Plaintiff also has not set forth facts sufficient to show that any misinformation he was given prevented him from timely filing his grievance. Exhaustion *may* be unavailable to a plaintiff when prison administrators "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 136 S.Ct. 1850, 1859-60 (2016). For misrepresentation to render administrative remedies unusable for their intended purpose, and therefore unavailable to an inmate, the administrative remedies must have (1) actually not been discovered by the inmate; and (2) been undiscoverable through reasonable effort. *Goebert v. Lee County*, 510 F.3d 1312, 1323-24 (11th Cir.

2007) ("That which is unknown and unknowable is unavailable"); *Brown v. Drew*, 452 F. App'x. 906, 907 (11th Cir. 2012).

Plaintiff fails to allege facts that demonstrate he could not or had not discovered the grievance procedures within the 20-day period following the incident or when he became aware that he needed to file a grievance regardless of what he was told. To the contrary, as discussed above, Plaintiff has clearly demonstrated an ability to understand and use the grievance process, as he filed multiple grievances and other requests to prison officials despite the misinformation he received. *See Miller v. Thurmer*, 2011 WL 3687596 *7 (E.D. Wis. Aug. 22, 2011) (holding that administrative remedies were available even where prison official told plaintiff he did not need to file a grievance because plaintiff (1) eventually did file an untimely grievance; (2) did not argue in that grievance, as a justification for untimeliness, that he was misled; and (3) had access to correct information regarding the grievance process from another source). Indeed, Plaintiff alleges he "did anyway" file proper, timely grievances, in accordance with grievance procedures. ECF Doc. 60 at 2. Moreover, less than a month after the incident, Plaintiff filed a request for the incident report. ECF Doc. 56 at 6. If Plaintiff believed he did not need to do anything, he would also not have needed to request the incident report. Accordingly, the undersigned finds Plaintiff has failed to present facts to show that any alleged misinformation he received rendered exhaustion unavailable.

### C. Failure to Respond

Finally, Plaintiff argues he could not exhaust his administrative remedies because prison officials failed to respond to his timely grievances. As set forth above, the undersigned does not find that Plaintiff timely filed his grievance. However, even assuming that he did and those grievances were lost and not responded to, a failure of the prison to respond does not eliminate Plaintiff's obligation to continue with the other steps of the administrative process. While several circuits have held that failing to timely respond to a grievance (which was received) may excuse what would otherwise be a failure to exhaust, the Eleventh Circuit has thus far declined to adopt that position. *See Wallace v. Hanratty*, 2010 WL 680342 *3 (N.D. Fla. Feb. 18, 2010) (citing *Burgest v. United States*, 316 F. App'x. 955, 956 (11th Cir. 2009) (invited to weigh in on the issue and join the other circuits, but instead opting to decide the case on an alternative ground)); *see also Tilus v. Kelly*, 510 F. App'x. 864, 866 (11th Cir. 2013) ("Without deciding the issue, we have . . . recognized that other courts of appeals have concluded that administrative remedies are unavailable where prison officials do not respond to an inmate's grievances . . . .").

In the absence of the Eleventh Circuit's guidance on the matter, this Court has repeatedly concluded that not receiving a response to the first step of the administrative review process (filing an informal grievance with a designated prison

staff member) does not excuse a plaintiff from pursuing the remaining steps – that is, filing a formal grievance with the warden's office and then submitting an appeal to the Secretary of the FDOC. *See Wallace*, 2010 WL 680342 at *3 (declining to find exhaustion excused where prison officials failed to respond to plaintiff's grievance and plaintiff did not proceed to the next two steps); *see also Jammes v. Alachua County Jail*, 2007 WL 2826069 *5 (N.D. Fla. Sept. 25, 2007) (finding that "when prison officials failed to deliver [Plaintiff] with a copy of the denial of his formal grievance, Plaintiff should have filed an appeal stating that officials had failed to respond").

Accordingly, regardless of whether the prison responded to his purported timely informal grievance, Plaintiff was required to pursue the remaining steps that were available to him. *See Whatley*, 802 F.3d at 1212 (finding district court erred in faulting prisoner for only pursuing the first and third administrative steps where the prison's failure to respond to his informal grievance prevented him from filing a formal grievance at the second step). The only support Plaintiff has submitted to the Court to show that he pursued the remaining steps is one conclusory allegation in the response that Plaintiff "followed with the formal grievance to Tallahassee [b]ut no response was issued on those as well." ECF Doc. 60 at 2. That allegation is insufficient under *Turner*.

Based on the documents submitted by the Plaintiff, following the prison's denial of his October grievance as untimely, Plaintiff mailed a document entitled, "Notice of Intent to Sue/Waiver of Qualified Sovereign Immunity" to the Secretary of the FDOC on October 27, 2017. ECF Doc. 56 at 20. In the document, Plaintiff notifies the Secretary of his intent to bring suit against for injuries he sustained during his attack on May 17, 2017. Nowhere in the notice does Plaintiff indicate he is appealing his October informal grievance, nor does he indicate he filed timely grievances to which he never received a response from prison officials. Thus, even if the Court were to assume Plaintiff filed an informal grievance within the 20-day time period, Plaintiff fails to demonstrate that he properly submitted an appeal to the Secretary of the FDOC.

### IV.   CONCLUSION

Accordingly, it is RECOMMENDED:

1. That Defendants' Motion to Dismiss (ECF Doc. 57) be GRANTED.

2. That the clerk be directed to close the file.

At Pensacola, Florida, this 18th day of December, 2019.

/s/ Hope Thai Cannon
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within 14 days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.</u>  A copy of objections shall be served upon the Magistrate Judge and all other parties.  A party failing to object to a Magistrate Judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.

Case No. 3:18cv254-MCR-HTC